RECEIVED
OCT 22 2018
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| CARLINE FISHERIES, INC., ET AL. | CIVIL ACTION NO. 6:16-1506 |
| VERSUS | |
| VECTOR DISEASE CONTROL INTERNATIONAL, LLC, ET AL. | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE HANNA |

### RULING

Before the court is a motion for summary judgment (Doc. 44) filed by defendants Vector Disease Control International, LLC and National Union Fire Insurance Co. of Pittsburgh, PA. For the reasons set forth below, the court finds that the motion should be DENIED.

**I.   BACKGROUND**

The Iberia Parish Mosquito Abatement District ("IPMAD")[1], tasked with conducting mosquito abatement services for the parish, contacted Vector Disease Control International, LLC ("Vector") sometime prior to November 3, 2015, about conducting an aerial application of a mosquito abatement chemical over parts of Iberia Parish. The two entered into a contract which called upon Vector to make an aerial application of the chemical Dibrom on the evenings of November 3 and 4, 2015, to specified areas of Iberia Parish. IPMAD provided Vector with GPS coordinates of these target areas, and Vector confirmed the coordinates by sending maps of the target areas back to IPMAD. Shortly before the aerial application on November 3, 2015, IPMAD made an oral change to the contract. Instead of Dibrom, to which the mosquitos had built a tolerance, Vector would spray the pesticide Permanone.

---

[1] IPMAD is an agency of Iberia Parish government.

The Permanone label contained a warning that the pesticide was "extremely toxic to aquatic organisms, including fish and invertebrates"; however, IPMAD made no mention regarding the existence of crawfish ponds in or around the target areas and Vector did not inquire. So, on the evening of November 3, 2015, Vector's pilot, Paul Heideman, conducted an aerial spray pursuant to IPMAD's directions. The target area sprayed that evening included the crawfish ponds of R. Two Ventures, LLC but none of the other plaintiffs' ponds. In fact, none of the ponds owned or operated by St. Mary Seafood, Inc., E.J. Sonnier, Elton Landry, or Joseph Patout fell inside that target area. The following evening, Heideman conducted the second application, and again, followed IPMAD's directions. That target area included portions of Guy Patout's, Troy Carline's, and Glenward Dugas' ponds but, none of St. Mary's Seafood, Inc.'s, E.J. Sonnier's, Elton Landry's, or Joseph Patout's crawfish ponds were located within that target area. Nevertheless, on November 5, 2015, these plaintiffs and their neighboring crawfish farmers noted dead crawfish in and around their ponds.

Joseph Patout was among the farmers who contacted the Opelousas/Lafayette office of the Louisiana Department of Agriculture and Forestry ("Depart. of Agriculture") to report the kill. Agents, including Jeremi A. Rabalais, visited the farmers ponds. Agent Rabalais visited Mr. Carline on November 9, 2015 and Joseph Patout and Guy Patout on November 10, 2015. On all occasions, he confirmed the existence of dead crawfish. Various other crawfish farmers affected by the kill were also consulted. Water samples and dead crawfish were collected and the water samples, none of which were taken from plaintiffs' ponds, tested positive for the presence of permethrin, the active ingredient in Permanone.

On October 26, 2016, plaintiffs filed this suit[2] alleging Vector failed to follow the EPA label directions and negligently sprayed permethrin on the plaintiffs' crawfish ponds. Plaintiffs seek damages for loss of: investment expenses, labor expenses, operational expenses, production, income, sales and revenue, and the next generation of crawfish.

Defendants filed this motion for summary judgment alleging that the plaintiffs will not be able to establish a case of negligence by Vector as it did not breach a duty of care and many of the plaintiffs have no evidence of causation. Plaintiffs opposed the motion and enumerated a number of disputed material facts which they contend prevent the court from granting defendants' motion.

## II. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anders on v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir.2011)(internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. Once done, the burden shifts to the nonmoving party to come forward with evidence which demonstrates

---

[2] Plaintiffs initially named Philadelphia Indemnity Insurance Company as a defendant, but it was dismissed on July 14, 2017 (Doc. 43) after the court granted the parties' joint voluntary motion to dismiss. Plaintiffs added National Union Fire Insurance Company of Pittsburgh, PA as a defendant on January 9, 2017, via an amended complaint.

3

the essential elements of his claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The nonmoving party must establish the existence of a genuine issue of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir.1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312, citing Anderson v Liberty Lobby, 477 U.S. at 247.

**III. ANALYSIS**

Defendants' motion asserts the plaintiffs lack evidence to support essential elements of their claims. First, defendants contend plaintiffs cannot establish a breach of a duty because Vector's actions were undertaken at the direction of IPMAD. IPMAD chose the chemical to spray, the concentration of the chemical per acre, the location of the target zones, and the timing of the aerial applications. The argument is that, because Vector made no decisions in these determinations, it couldn't have breached a duty.

Vector's argument is flawed as it only discusses "duty" in the abstract. As pointed out by plaintiffs, there are arguable duties which fall to Vector regardless of IPMAD's instructions. Specifically, Vector had a duty to follow the Environmental Protection Agency label found on the chemical it sprayed, Permanone 31-66. The Permanone 31-66 label provided in pertinent part:

> Do not apply over bodies of water (lakes, rivers, permanent streams, natural ponds, commercial fish ponds, swamps, marshes or estuaries) except when necessary to target where adult mosquitoes are present, and weather conditions will facilitate movement of applied material away from the water in order to minimize incidental deposition into the water body.

4

While plaintiffs point to the first part of the label, do not apply over commercial fish ponds, Vector relies on the second part, "except when necessary to target adult mosquitoes." Neither party focused on the third part of the label requiring the weather conditions be such that the chemical will move away from the water and minimize incidental deposits.

Second, Vector argues that plaintiffs St. Mary Seafood, Inc., E.J. Sonnier, Elton Landry, and Joseph Patout cannot establish that Vector caused the crawfish kill at their ponds. In support, Vector notes the fact each of these defendants' ponds fall outside of the areas targeted on November 3 and 4, 2015. Further, each of these plaintiffs acknowledge they did not see Vector conducting an aerial application over their ponds. This argument also lacks merit.

As explained *supra*, there are outstanding questions regarding the weather patterns on the evenings of November 3 and 4, 2015. Was the weather suitable to deter chemical drift into the ponds? Additionally, the court is left with questions whether the amount of chemical sprayed was sufficient to cause the crawfish kill. While the plaintiffs' expert states the levels were lethal, the defendants' expert provides testimony that the concentration sprayed could not have possibly resulted in a lethal deposition of chemical. As these and other questions remain, it is premature to decide whether these defendants can carry their burden of proving causation at trial.

The court declines to dismiss the claims of Guy Patout for failure to respond to the motion for summary judgment. The claims of the plaintiffs are very much alive, and we do not dertermine that Mr. Patout, a *pro se* plaintiff, should be prejudiced at this time. Nevertheless, Mr. Patout is cautioned that as a *pro se* plaintiff, he is expected to actively participate in the prosecution of his case and any future failure to respond to pleadings will not be taken lightly.

Finally, we note, while the plaintiffs assert in their complaints that Vector was negligent in conducting its aerial application, they rely upon cases which were decided under a theory of strict

or absolute liability. This case is a negligence case and neither strict nor absolute liability are applicable to this defendant. Additionally, plaintiffs' reliance upon *res ipsa loquitor* is misplaced as the record evidence, at least to date, provides an equally as plausible explanation for the crawfish kill experienced by the plaintiffs on November 5, 2015.

## IV.  CONCLUSION

Based on the foregoing, the court finds the defendants' motion for summary judgment will be denied. The court will issue a judgment in conformity with these findings.

**SIGNED** this 22ND day of October 2018, at Alexandria, Louisiana.

                                              DEE D. DRELL, JUDGE
                                     UNITED STATES DISTRICT COURT